S:\01cv9000Q-ord.wpd

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

|   |   |   |
|---|---|---|
| **IN RE: SULZER HIP PROSTHESIS AND KNEE PROSTHESIS LIABILITY LITIGATION** | : : : : : : : : | **Case No. 1:01-CV-9000** <br><br> **(MDL Docket No. 1401)** <br><br> **JUDGE O'MALLEY** <br><br> **MEMORANDUM AND ORDER** |

Earlier, this Court entered orders enjoining the prosecution of state court litigation related to an alleged product defect in Sulzer Orthopedic, Inc.'s Inter-Op acetabular shell hip implant ("hip implant"). See docket entries 72 & 90. At a recent Case Management Conference ("CMC"), the parties stipulated to the modification of certain terms contained in the injunction. Further, Sulzer has moved the Court to enter an Order enjoining the prosecution of state court litigation related to an alleged product defect in its Natural Knee II porous coated tibia1 stemmed baseplate knee implant ("knee implant") (docket no. 113), a motion which Plaintiffs' Class Counsel has joined.

For the reasons stated below, the Court accepts the parties' stipulated changes. In connection with this decision, the Court **DENIES** the motion of certain Texas state court plaintiffs to reconsider the Court's entry of injunctive relief regarding hip implants (docket no. 95). Further, the motion to enjoin state court litigation related to knee implants is **GRANTED**. The parties are **ORDERED** to notify any interested party of this Order, as soon as and to the fullest extent reasonably possible.

The Court's modified injunction is set out in section V of this Order, below.

I. Case History.

The Court has recited the factual and procedural history of this case several times, and will not repeat it here. See Order at 1-7 (Aug. 31, 2001) ("Hip Class Order"); Order at 2-5 (Sept. 17, 2001) ("Injunction Order"); Order at 1-8 (Oct. 19, 2001) ("Knee Class Order"). Rather, the Court incorporates by reference its prior opinions in full. For the purpose of ruling on the pending motion for injunctive relief, the following procedural summary is sufficient.

- In the Hip Class Order, the Court conditionally certified a national plaintiff settlement class composed, essentially, of "all Americans in whom were implanted a recalled Inter-Op acetabular shell, together with their loved ones." Hip Class Order at 9.

- In the Injunction Order, the Court enjoined state court litigation "related in any way to claims arising out of an alleged product defect in Sulzer Orthopedic, Inc.'s Inter-Op acetabular shell hip implant." Injunction Order at 2.

- In the Knee Class Order, the Court expanded the definition of the national plaintiff settlement class to include knee claimants. The redefined class included, essentially, all Americans in whom were implanted a recalled Inter-Op acetabular shell or a recalled Natural Knee II tibia1 baseplate implant, together with their loved ones. Knee Class Order at 17. The Court declined to extend the Injunction Order to enjoin knee litigation, however, "pending receipt of additional briefing." Id. at 4.

II. Stipulated Modifications.

At a recent CMC, the Court met with the parties and also with the Special State Counsel Committee. The Special State Counsel Committee represents the vast majority of both knee and hip claimants nationwide.[1] All counsel present, and many who were not present but whose positions were represented by others, stipulated to the addition of certain terms to the Court's Orders enjoining related state court litigation. Primarily, these terms include: (1) a date certain when the injunction will end; and (2) certain limited exceptions to the injunction, to avoid problems related to statutes of limitations and service of process.[2] The parties informed the Court that this stipulation represented a compromise: State Court Counsel would refrain from lodging any challenge (in the Sixth Circuit Court of Appeals or otherwise) to an Order enjoining state court litigation, in return for a date certain that the injunction would expire, absent further agreement to extend it. The parties explained that those involved in negotiating this stipulation believed that an injunction of limited duration would operate in the best interests of plaintiffs and defendants alike, by providing a meaningful time frame within which all parties could fully assess the fairness of the proposed settlement agreement.

The Court concludes it is appropriate to accept the parties' stipulation and add the requested terms to its Order granting injunctive relief. Accordingly, the Court accepts the stipulation, and has included these additional terms in the injunction, set out in section V of this Order.

---

[1] Of course, Plaintiffs' class counsel also represents the interests of these individuals, but the members of the Special State Counsel Committee specifically represent individuals who have filed, or have expressed intentions of filing, their own cases in state court, as distinct from those cases that originated in federal court.

[2] For the most part, these exceptions were already included in the Court's earlier Orders granting injunctive relief. The parties stipulated to minor clarifications to these exceptions.

3

III. Motion for Reconsideration

Before analyzing the motion to enjoin state court litigation related to knee implants, it is appropriate to address here a motion for reconsideration of the Court's original Injunction Order. After the Court issued the Injunction Order, counsel for a small number of Texas state court plaintiffs asked the Court to reconsider and vacate its stay. In that motion, counsel argues that: (1) the Court does not have personal jurisdiction over absent class members, so it does not have the power or authority to enjoin related state court litigation; and (2) the conditionally approved settlement agreement has "structural flaws," because it "does not afford a meaningful opt-out," so the injunction is unfair.

The Court rejects both arguments. Regarding personal jurisdiction, an "important feature" of the All Writs Act "is its grant of authority to enjoin and bind non-parties to an action when needed to preserve the court's ability to reach or enforce its decision in a case over which it has proper jurisdiction." In re Baldwin-United Corp., 770 F.2d 328, 338 (2nd Cir. 1985). Furthermore, it is clear that "Congress may, consistent with the due process clause, enact legislation authorizing the

federal courts to exercise nationwide personal jurisdiction." In re Agent Orange Product Liab. Litig., 818 F.2d 145, 163 (2nd Cir. 1987) (affirming exercise of jurisdiction under the MDL statute, 28 U.S.C. §1407); see also Medical Mutual of Ohio v. deSoto, 245 F.3d 561, 567-68 (6th Cir. 2001) (affirming exercise of personal jurisdiction under ERISA because "Congress has the power to confer nationwide personal jurisdiction"). This Court does have personal jurisdiction over the absent class members for the

purpose of enjoining related litigation.[3]

Regarding "structural flaws" in the conditionally approved settlement agreement, the Court disagrees that the opt-out provision is meaningless. The Court discussed this issue at length in the Hip Class Order at 19-20 and 40-45, and reaffirms here its reasoning and conclusion. Counsel's assertion that the opt-out provision is meaningless simply repeats arguments that the Court fully considered, discussed, and rejected, without adding anything new. Repetition of this complaint does not make it true.

Furthermore, "motions to reconsider [are] nowadays correctly styled either motions for new trial or motions to alter or amend judgment," brought pursuant to Fed. R. Civ. P. 59. Feathers v. Chevron, U.S.A., Inc., 141 F.3d 264, 268 (6th Cir. 1998). "Motions under Rule 59(e) must either clearly establish a manifest error of law or must present newly discovered evidence." Sault Ste. Marie Tribe of Chippewa Indians v. Engler, 146 F.3d 367, 374 (6th Cir. 1998) (citations omitted). See also Hutchinson v. Staton, 994 F.2d 1076 1081 (4th Cir. 1993) ("courts interpreting Rule 59(e) have recognized three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice"). Counsel has not come close to meeting this standard. Accordingly, the motion for reconsideration is denied.

---

[3] Counsel cites Carlough v. Amchem Products, Inc., 10 F.3d 189, (3rd Cir. 1993), for the proposition that this Court does not obtain personal jurisdiction over non-consenting, absent class members until after they have had the opportunity to opt out. See id. at 200 ("prior to notice and the commencement of the opt out period, the district court did not have personal jurisdiction") (interpreting Phillips Petroleum Co. v. Shutts, 472 U.S. 797 (1985)). Even if this Court agreed with Carlough's interpretation of Shutts – which it does not – Carlough also affirmed that "once the district court approved the dissemination of notice and commenced the opt out period . . . , the jurisdictional problem was resolved." Id. at 201. Thus, at most, counsel points only to a harmless "initial jurisdictional overreach." Id.

IV. Motion to Enjoin Litigation of Knee Claims.

A. The Current Positions of Interested Parties.

As noted, the Court earlier expanded the definition of the plaintiff class to include knee claimants, but declined to extend the Injunction Order to enjoin knee litigation "pending receipt of additional briefing." Knee Class Order at 4. Subsequently, the Court received a brief from certain Texas state court knee claimants[4] opposing the motion for an order enjoining knee litigation (docket no. 135), and also a reply brief (docket no. 138).

Notably, these Texas state court knee claimants have since told the Court, during a CMC, that they no longer oppose entry of an Order enjoining state court knee litigation, so long as any injunction does not have an indefinite term.[5] This position was echoed by all other counsel for state court plaintiffs who were present at the CMC, including all members of the Special State Counsel Committee. These counsel represent the vast majority of both knee and hip claimants. Thus, there is now broad consensus (if not virtual unanimity) among interested parties that an Order enjoining both state court hip and knee litigation is appropriate. Despite widespread notice of the pending motion to enjoin knee-related litigation, the Court has knowledge of no other formal or informal objection.

Even though all of these interested parties have offered to stipulate to the entry of an injunction Order applicable to knee claimants, the Court believes it has an independent duty to ensure that such an

---

[4] These Texas knee claimants are different from the Texas hip plaintiffs who filed the motion for reconsideration, and are represented by different counsel.

[5] Specifically, various counsel representing hundreds of state court plaintiffs stated they would stipulate to entry of an injunction enjoining the prosecution of knee litigation in state court if, absent further agreement, the injunction expired by its own terms on February 1, 2002.

Order is appropriate, because an injunction will affect persons who, though silent on the issue to date, may object to such an Order. Thus, although the injunction entered by the Court in this Order reflects most of the terms suggested by the parties' proposed stipulation, the Court reaches its conclusion independently. In light of the stipulation by all interested parties, the absence of any objection, and the reasons noted below, the Court concludes it is appropriate to enjoin the prosecution of state court litigation related to knee implants

### B. Analysis.

In its Injunction Order, the Court set out a full analysis of the propriety of enjoining state court litigation related to an alleged product defect in Sulzer hip implants. Injunction Order at 5-11. The Court now concludes that virtually every aspect of this analysis applies equally to the question of the propriety of enjoining state court litigation related to an alleged product defect in Sulzer knee implants.

As the Court noted, the Anti-Injunction Act "is an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions." Id. at 6 (quoting Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 286 (1970)). If an exception does apply, a federal district court may enjoin state court proceedings under the authority of the All-Writs Act. Id. In the Injunction Order, the Court ultimately "conclude[d] that, given the unique circumstances of this case, the defendants' motion for injunctive relief enjoining related state court litigation is well-taken and authorized under the Anti-Injunction Act and the All-Writs Act." Id. at 7.

For at least three different reasons, the Court was convinced that "allowing the state court plaintiffs to pursue their parallel state court actions will frustrate the proceedings in this case and disrupt the orderly

7

resolution of the MDL litigation." Id. All of those same reasons convince the Court that allowing state court plaintiffs to pursue parallel state court actions in knee cases will also "frustrate the proceedings in this case and disrupt the orderly resolution of the MDL litigation."

The Court's first reason was that "it would pose an undue burden upon the defendants if they are forced to maintain their defenses in the related state court actions." Id. at 8. On September 13, 2001 – after the Court had certified a "hip class," but before the Court expanded the class definition to include knee claimants – the Court set an "onerous and expedited discovery schedule" directed primarily at the issue of the fairness of the proposed settlement agreement. Id. at 5, 8. This schedule required the parties to "undertake a massive [discovery] effort, all within six months." Id. at 8. In the Injunction Order, the Court concluded that an injunction was necessary because, "[w]ithout some protection from the distraction to the defendants that the state court cases would create, it is extremely unlikely the parties in this case will meet this Court's deadlines or have the time and manpower to make the fairness hearing scheduled by this Court a meaningful one." Id. at 8-9.

Unfortunately, this statement proved prophetic. The Court has had to postpone the fairness hearing by two months, in part because the Injunction Order did not fully insulate the parties from continued distractions caused by state court hip plaintiffs, and in part because state court knee plaintiffs, who were not previously enjoined, did distract the parties as they continued to litigate this case. Furthermore, the inclusion of knee claimants in the class has only served to expand the scope of discovery. And, it has become clear that the discovery in this case is more onerous than even the Court and the parties originally believed. The Court has met regularly with counsel and is very familiar with their round-the-clock discovery efforts, including: (1) the production and cataloging of over 375,000 documents, many of which

8

must be translated to English; (2) scheduling of numerous depositions in foreign countries; (3) analyzing extremely complex insurance coverage and corporate structure issues; and (4) maneuvering through serious and complex discovery obstacles created by Swiss corporate law. The parties' task of adhering to this Court's Orders has been herculean; to ask the parties to do so while fighting essentially the same battle on different fronts with dozens or hundreds of state court plaintiffs would be impossible.

Indeed, it has now become clear that it is not only defendants who would be seriously prejudiced if the Court denied the current request for an injunction. Plaintiff's Class Counsel and counsel for the interested state court claimants have aggressively pursued discovery of numerous matters critical to their ability to assess the fairness of the proposed settlement. Counsel for plaintiffs can only accomplish this task within the time frame allotted if they are given the undivided attention of those to whom the discovery requests are posed. Neither counsel for plaintiffs nor counsel for defendants can negotiate final settlement terms, or engage in their ongoing fairness assessments, without the protection and relative repose an injunction can bring.

Put simply, absent an order enjoining state court proceedings related not only to hip litigation but also knee litigation, it is certain that the prosecution of state court cases will "'seriously impair the federal court's flexibility and authority' to approve settlement[] in the multi-district litigation." In re Baldwin-United Corp., 770 F.2d at 337 (quoting Atlantic Coastline, 398 U.S. at 295).

The Court's second reason for enjoining hip litigation was that "the plaintiff class, itself, is likely to suffer substantial harm if the separate state court actions are not enjoined." Injunction Order at 9. This statement is as true now as it was when the plaintiff class included only hip claimants. Every dollar spent by the Sulzer entities defending themselves in related litigation in state court is a dollar no longer available

9

to pay injured plaintiffs in this class action. The requested injunction will "actually work[] to preserve assets against which all plaintiffs may ultimately recover." Id.  Further, the discovery mechanisms agreed to by the parties to assess the scope and availability of Sulzer assets is available only because of the unique structure of the parties' settlement-related efforts, including a stay of related litigation.  This open and searching process, so valuable to the plaintiffs, would not be available in "standard" litigation and would not be feasible in the absence of an Order enjoining "standard" litigation.

Finally, the Court's third reason was that a settlement of this case "could effectively preempt the need for the filing of thousands of cases, in both state and federal courts." Id. at 10.  The parties in this case have, so far, taken extreme measures – unprecedented in this Court's experience – to uncover information regarding the defendants' ability to provide compensation to the plaintiff class.  The Court has high hopes that the final terms of the settlement agreement in this case will be fair, and, indeed, better for the plaintiffs, from a class perspective, than all plaintiffs could obtain individually.  This is equally true for both knee claimants and hip claimants. Enjoining related state court litigation may ultimately "have the effect of resolving a sea of potential claims," and the presence of opt-out rights "protects plaintiffs who may not want to participate in the settlement." Id.  The injunction will also prevent competing, or "dueling" class actions.

In sum, the Court concludes the motion to enjoin related state court "knee litigation" is well-taken. Accordingly, pursuant to the terms stated below, the Court will enjoin all state court litigation related to both knee and hip implants.

V. Injunction Order.

The Court hereby enters the following **INJUNCTION**, which modifies docket entries 72 & 90. The parties are **ORDERED** to notify any interested party of this Order, as soon as and to the fullest extent reasonably possible.

> The Court hereby **ENJOINS**: (a) any and all persons from commencing or continuing prosecution (b) of any claim or action or legal proceeding (c) in any federal, state, or territorial court (d) against the "Sulzer Defendants"[6] or their assets (e) related in any way to claims arising out of (f) an alleged product defect in a Sulzer Orthopedic, Inc. Inter-Op acetabular shell hip implant ("hip implant") or Natural Knee II porous coated tibia1 stemmed baseplate knee implant ("knee implant").
>
> This injunction shall remain in force until 8:00 a.m. EST, February 1, 2002, unless otherwise agreed to by all of the following individuals: Richard Scruggs – counsel for Sulzer; R. Eric Kennedy – counsel for the MDL/Class Action Plaintiffs; Richard Heimann – counsel for the California State Court Plaintiffs and the Knowland Plaintiffs; Edward Blizzard – counsel for the Texas State Court Plaintiffs; Mark Robinson – counsel for the Drummer and Spellman Plaintiffs; and Andres Pereira – counsel for Glasscock Plaintiffs; and approved by the Court. The Court retains jurisdiction to: (1) modify or vacate this injunction if circumstances change; and (2) lift the injunction as it applies to any uniquely situated person prosecuting any given legal proceeding, for good cause shown, on a case-by-case basis.
>
> This injunction does not prohibit a plaintiff from noticing and taking a deposition to preserve a witness's testimony, if there is substantial reason to believe that the witness's health creates an imminent danger of losing that witness's testimony.
>
> Because this injunction might cause a statute of limitations problem for certain plaintiffs, the Court also makes the following exception, pursuant to a stipulation by the parties. Any and all statutes of limitation that apply to any and all claims against the Sulzer

---

[6] The Sulzer Defendants are defined to include, for the purposes of the injunctive relief entered in this Order: (1) Sulzer Orthopedics Inc. and each of its affiliates, including Sulzer Medica Ltd. and each of Sulzer Medica Ltd.'s other past, present and future parent companies and direct or indirect subsidiaries, together with each of their respective past, present and future directors, officers, affiliates, insurers, employees, customer-physicians (and related hospitals and medical suppliers), and agents, including without limitation, sales agents; and (2) Sulzer AG, a limited company organized under the laws of Switzerland, and all of its past, present and future parent companies and direct or indirect subsidiaries, its and their respective past, present and future directors, officers, affiliates, insurers, employees, customer-physicians (and related hospitals and medical suppliers), and agents.

11

Defendants relating in any way to an alleged product defect in a hip implant or knee implant shall toll from the date of September 17, 2001 through the date this injunction terminates. Nonetheless, any individual wishing to prosecute such a claim <u>may</u> commence litigation by filing and serving a complaint at any time.[7] If such a complaint is filed, any Sulzer Defendant named in the complaint shall have thirty days from February 1, 2002 to either: (1) file a responsive pleading; or (2) where appropriate, remove the case pursuant to 28 U.S.C. §1446 and immediately initiate the "tag along" process pursuant to the J.P.M.D.L. rules. If such a case is removed, the plaintiff may move for remand, the defendants may object, and the affected Federal Court may enter an Order addressing the motion. All other judicial proceedings in such cases are thereafter enjoined.

The time period for service of process set out in any applicable rule of civil procedure is tolled from the date of September 17, 2001 through the date that this injunction terminates. The Sulzer Defendants agree to waive any defenses regarding timeliness of service of process to the extent the applicable time period has been tolled by this Order.

**IT IS SO ORDERED.**

        **s/Kathleen M. O'Malley**
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

---

[7] This provision is meant only to protect plaintiffs whose case is or would be properly venued in a jurisdiction that does not recognize the tolling of a statute of limitations as a legal right under the circumstances of this case. The Court does not mean to suggest that hip or knee claimants should file a case in state court if they have no concern regarding a statute of limitations.