01-9000-Kuhn-Jacks-appeal.wpd

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| | : | Case No. 1:01-CV-9000 |
| | : | |
| IN RE: SULZER HIP PROSTHESIS | : | (MDL Docket No. 1401) |
| AND KNEE PROSTHESIS | : | |
| LIABILITY LITIGATION | : | JUDGE O'MALLEY |
| | : | |
| | : | **MEMORANDUM AND ORDER** |
| | : | |
| | : | |

As explained at length in an Order dated October 18, 2005 ("*October Injunction Order*," docket no. 3018), plaintiff class member Susan Kuhn has filed a legal malpractice action in Texas state court against her former attorney, Tommy Jacks. In the *October Injunction Order*, the Court granted motions by Jacks and defendant Sulzer Orthopedics, Inc.[1] for permanent injunctive relief,

---

[1] Sulzer Orthopedics, Inc. was later renamed Centerpulse Orthopedics, Inc., and then purchased by Zimmer Holdings, Inc. The Court refers to the defendant as "Sulzer."

prohibiting Kuhn from pursuing certain discovery and from prosecuting certain claims.[2]

Kuhn now moves to reopen the time within which she may file an appeal from the *October Injunction Order* (docket no. 3050).  For the reasons stated below, this motion is **DENIED**.

**I.  Procedural History.**

On July 25, 2005, Sulzer filed an emergency motion seeking to enjoin Kuhn from pursuing certain discovery in her Texas state court malpractice action against Jacks.  The Court granted the motion by entering a temporary injunction, *see* docket no. 2961 ("*Kuhn Injunction Order*"), and scheduled a hearing on August 17, 2005 to determine the propriety of continuing the injunctive relief.  Before the August hearing, attorney Jacks also filed a motion for injunctive relief, essentially asking for the same relief as had Sulzer in its emergency motion.  In addition, Kuhn filed a motion for reconsideration of the *Kuhn Injunction Order*.

At the close of the hearing on August 17, 2005, the Court issued an oral ruling prohibiting Kuhn from engaging in "discovery relating to [her] current claims."  Hearing tr. at 39.  The Court further stated that it needed more time to assess "the scope of the claim that is still available to . . . . . . Kuhn and . . . the jurisdiction in which that claim can be asserted."  *Id.* at 38.  Accordingly, the

---

[2]  Specifically, the *October Injunction Order* stated as follows:
 * * * Kuhn is hereby permanently enjoined from pursuing claims for fraud, misrepresentation, breach of fiduciary duty, deceptive trade practices, or similar legal theories against Jacks, whether in connection with her existing Texas lawsuit or any other lawsuit.  Further, Kuhn is enjoined from challenging (whether directly or indirectly) in her Texas lawsuit or any other lawsuit, and from pursuing discovery regarding: (1) the propriety of, basis for, or amount of any common benefit fee awards; (2) the adequacy of Notice to class members of the terms of the Settlement Agreement; and (3) the fairness, adequacy, or reasonableness of any provision contained in the Settlement Agreement.
*October Kuhn Order* at 23.

2

Court explained that its oral ruling was not a final, appealable order. Rather, the Court would issue a full analysis in a written order, from which Kuhn could seek to take an appeal if she desired. *Id.* at 39 ("[t]his won't be a final order until I issue the written decision").

On October 6, 2005, Kuhn filed a motion asking the Court to issue its promised written opinion so that she could take an appeal. *See* docket no. 3015 at 4 ("Kuhn respectfully requests that this Court exercise its duty to enter a written order . . . in order that Movant may take such actions as are necessary to protect her rights, including, but not limited to, seeking review of the propriety of such an order by virtue of 28 U.S.C. §1292(a)(1), which authorizes appeals from interlocutory orders"). On October 18, 2005, the Court mooted Kuhn's motion by doing as she asked and issuing the *October Injunction Order*. As noted, the *October Injunction Order* permanently enjoined Kuhn from pursuing certain discovery and from prosecuting certain claims.

Pursuant to Fed. R. App. Pro. 4(a)(1), Kuhn had 30 days to file a notice of appeal from the *October Injunction Order*, giving her a deadline of November 17, 2005. Kuhn did not file a notice of appeal before the deadline. On January 6, 2006, however, Kuhn invoked Fed. R. App. Pro. 4(a)(6) and moved the Court to reopen the period within which she could file her notice of appeal.[3]

**II. Analysis.**

Kuhn's attorney, James Harris, submits an affidavit stating he never received a copy of the Court's *October Injunction Order* and only learned on January 6, 2006 that it had been issued.

---

[3] Kuhn did not rely on Fed. R. App. Pro. 4(a)(5), which allows a district court to *extend* the 30-day period within which to file a notice of appeal, because the motion for an extension under this rule must itself be filed within 30 days of the expiration of the original 30-day period. Given the timing of her motion, Kuhn's only option was to reopen the time within which to appeal, pursuant to Fed. R. App. Pro. 4(A)(6).

3

Specifically, Harris's paralegal was reviewing the Court's electronic docket via the internet and informed Harris that the *October Injunction Order* had issued over two months earlier. Harris then filed his motion to reopen on January 10, 2006.[4]

In August of 2005, in order to defend against Jacks' and Sulzer's motions for injunctive relief, Harris filed a motion for admission pro hac vice, which this Court granted. *See* docket no. 2967. As an attorney admitted to practice before this Court in connection with this case, Harris had an obligation to monitor the case docket and to comply with the Court's Practice and Procedure Orders entered in the case. The very first Order this Court entered in this case states that "Counsel **must** be able to receive notice from the Court via e-mail." Docket no. 3 at 2.

Harris's motion for pro hac vice shows that he has an email address. That Harris's paralegal found the Court's *October Injunction Order* via the internet shows that Harris's office is familiar with the use of ECF and PACER, which allows easy review of the Court's docket. In order to receive automatic email notifications of Court Orders upon their filing, Harris (or his paralegal) merely needed to enter his email address on the docket via ECF. Apparently, however, Harris failed to take this elementary step.

The law is clear that "[p]arties have an affirmative duty to monitor the dockets to inform themselves of the entry of orders they may wish to appeal." *Reinhart v. U.S. Dept. of Agriculture*, 2002 WL 1492097 at *2 (6th Cir. July 10 2002), *cert. denied*, 538 U.S. 979 (2003) (quoting *In re Delaney*, 29 F.3d 516, 518 (9th Cir. 1994)). *See also In re Jamison*, 1993 WL 492342 at *2 (6th Cir.

---

[4] Fed. R. App. Pro. 4(a)(6)(A) states that a district court may reopen the time to file an appeal if the motion seeking reopening "is filed within 180 days after the judgment or order is entered or within 7 days after the moving party receives notice of the entry, whichever is earlier." The Court accepts Kuhn's motion to reopen as timely filed.

Nov. 24, 1993) ("failure [by the Court] to notify a party of the entry of judgment" does not extend the time for appeal, "as each party has an independent duty to monitor the progress of his case") (citing *Alaska Limestone Corp. v. Hodel*, 799 F.2d 1409, 1411-12 (9th Cir. 1986)). Unlike a decade ago, when law firms often hired "runners" to physically go to the courthouse to check the docket, monitoring the docket of a federal case today does not require an attorney even to leave the seat in front of his computer. Harris failed to undertake his simple duty of checking the docket, and he has not given a good explanation for his failure to do so. Rule 4(a)(6) states that a "district court *may* reopen the time to file an appeal" if certain conditions are met. The Sixth Circuit Court of Appeals has observed that "[t]he rule states that a district court 'may' reopen the time for appeal, not that it must," even if all the requirements of Rule 4(a)(6) are met. *Evans v. United States*, 1998 WL 598712 at *3 n.3 (6th Cir. Aug. 28, 1998); *see also Benavides v. Bureau of Prisons*, 79 F.3d 1211, 1214 (D.C. Cir. 1996) ("[i]f in a particular case the movant is at fault . . . then the district court may, in its discretion, deny relief under Rule 4(a)(6)").

In this case, the Court concludes, in its discretion, that Harris is not entitled to a reopening of the appeal period, because his failure to learn timely of the Court's filing of the *October Injunction Order* is largely of his own making. Especially where Harris took the step of filing a motion asking the Court to promptly issue the promised ruling, it is not too much to ask that Harris fulfill his own obligation to monitor the docket for that ruling. Accordingly, the motion for reopening is denied.

**IT IS SO ORDERED.**

/s/ Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED**: March 14, 2006