**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| | ) | **Civil Action No.  01-CV-9000** |
| | ) | **(MDL NO. 1401)** |
| **IN RE: SULZER HIP PROSTHESIS** | ) | |
| **AND KNEE PROSTHESIS PRODUCT** | ) | **JUDGE O'MALLEY** |
| **LIABILITY LITIGATION** | ) | |
| | ) | **THIS DOCUMENT PERTAINS** |
| | ) | **TO ALL CASES** |
| | ) | |

## ORDER

James J. McMonagle, Claims Administrator ("Claims Administrator") for the Sulzer

Settlement Trust ("Trust"), pursuant to Settlement Agreement § 1.1(p), as amended, in *In re*

*Sulzer Hip Prosthesis and Knee Prosthesis Product Liability Litigation*, MDL No. 1401

("Settlement Agreement") has submitted for the Court's consideration a Motion for Approval of

Settlement Wind Up Procedures ("Wind Up Procedures").[1]  The Court has received no responses

or objections to this Motion for Approval.  For the reasons advanced by the Claims

---

[1] Capitalized terms not otherwise defined in this Motion have the meaning given them in the Settlement Agreement.

Administrator and as recited in this Order, the Court GRANTS the Claims Administrator's

Motion and makes the following findings and enters the following orders:

<b>Administration of the Settlement Agreement</b>

1.      On the evidence submitted in support of the Claims Administrator's Motion and

on the record developed in the course of this Settlement since 2002, the Court finds that the

Settlement Agreement has served its intended purposes and that the Claims Administrator has to

date discharged his obligations pursuant to the Settlement Agreement with reasonable diligence

and prudence and in a manner consistent with the requirements of the Settlement Agreement.

<b>Funding of the Sulzer Settlement Trust --Settlement Agreement § 2.5</b>

2.      The Released Parties have satisfied all their initial funding obligations, including

tendering the Financing Amount ($425 million less pre-Funding Date administration fees and

costs), the Initial Insurance Proceeds ($178.5 million), $50 million in cash from Sulzer AG, the

Settlement Shares ($60.4 million), and the Second Year Insurance Proceeds to the Sulzer

Settlement Trust ($40.2 million).

3.      Pursuant to Article 16 (Block Trade Agreement) of the Settlement Agreement, the

Settlement Shares were liquidated and their cash value deposited into the Sulzer Settlement

Trust.

4.      Sulzer elected, pursuant to Annex III of the Settlement Agreement, to pay $300

million to the Trust in lieu of tendering the Convertible Call Instrument and that deposit was

complete on November 4, 2002.

5.      Pursuant to Settlement Agreement § 2.2, and by November 8, 2002, the Funds

and Sub-Funds of the Trust were funded with at least their minimum, initial amounts:

        a.   Medical Research and Monitoring Fund: $1.0 million.

2

    b.   Unrevised Affected Product Recipient Fund: $28.0 million.

    c.   Affected Product Revision Surgery Fund: $622.5 million.

    d.   Extraordinary Injury Fund: $100 million.

    e.   Professional Services Fund (Subrogation and Uninsured Expenses Sub-Fund): $60 million.

    f.   Professional Services Fund (Plaintiffs' Counsel Sub-Fund): $184.0 million.

6.     Since the Funding Date, the Claims Administrator has demanded, pursuant to applicable Court orders, Settlement Agreement § 2.5 and CAP's 22 and 31, payment by Sulzer of additional funds of $74,005,605.03.  All those payment requests have been honored.

7.     New reimbursement requests, pursuant to Settlement Agreement § 2.5, associated with the small number of pending EIF Claims and certain Uninsured APR medical expenses, are likely in the coming months.

**Medical Research and Monitoring Fund – Settlement Agreement § 3.1**

8.     Settlement Agreement § 3.1 provides that the Medical Research and Monitoring Fund "shall be used to finance medical research relating to reconstructive orthopedic implants, specifically hip and knee implants, for the benefit of Class Members as set forth on the proposal" described in Annex III to the Settlement Agreement.

9.     Settlement Agreement § 3.1 also provides for the creation of a "registry" of Class Members for "the purpose of collection of information and data in order to monitor the medical condition of such Class Members."

10.     The Court has approved research grants, Docket Entries 2948 and 3185, consistent with Settlement Agreement § 3.1 and Annex III for a total of $1,000,419.00 with $550,000.00 remaining to be paid from the Trust.

11.     Therefore, the purposes of the Medical Research and Monitoring Fund having been fulfilled, the Court ORDERS that the Claims Administrator create a reserve of $550,000 to pay the remaining obligations of the Trust with respect to the Court approved research grants.

### Unrevised APR Claims – Settlement Agreement § 3.3

12.     The deadline for a timely Unrevised APR Claim (Blue Form) was September 5, 2002.   All of those Claims have now been finalized and none are pending.

13.     The Claims Administrator has directed a total of approximately $2.9 million in Unrevised APR Fund payments.

14.     Given that there are no pending Unrevised APR Claims and that the deadline for making such Claims expired more than four years ago, the Court ORDERS that the Claims Administrator not create a reserve for present or future Unrevised APR Claims.

### APRS Claims -- Settlement Agreement § 3.4

15.     The deadline for a timely APRS Claim (Orange Form) was different depending on when the APRS occurred and what Affected Product type was revised.  Nevertheless, the last possible deadline prescribed in the Settlement Agreement for making a compensable APRS Claim, regardless of product type or APRS date, has passed.

16.     The last possible APRS Claims were due to be filed December 2, 2003, May 15, 2004, and March 7, 2005 for Inter-Op Shells, Tibial Baseplates, and Reprocessed Shells, respectively.

17.     The Claims Administrator has directed payment of a total of approximately $695.9 million in APRS Fund payments.

18.     There are presently three APRS Claims pending that have not been finalized.  The Claims Administrator anticipates that these will be finalized, pursuant to the administration procedures required by Settlement Agreement § 4.6, by the end of 2006.

19.     Pursuant to Settlement Agreement § 2.5(d), Sulzer is responsible for reimbursing to the Trust 50% of the value of APRS Claims related to Inter-Op Shells or Tibial Baseplates after the first 4,000 such Claims have been paid.  Because there have been more than 4,000 such Claims, 50% of any  new APRS Claims related to Inter-Op Shells or Tibial Baseplates that were determined to be timely and valid would ultimately be paid by Sulzer.

20.     Pursuant to Settlement Agreement § 2.5(e), Sulzer is responsible for reimbursing to the Trust 100% of the value of APRS Claims related to Reprocessed Shells after the first 64 such Claims have been paid.  Because there have been more than 64 such Claims, 100% of any new APRS Claims related to Inter-Op Shells or Tibial Baseplates that were determined to be timely and valid would ultimately be paid by Sulzer.

21.     The Court ORDERS the Claims Administrator create a reserve of $600,000 for payment of the three pending APRS Claims in the event those Claims are compensable.

22.     Since a late Claim may, pursuant to applicable rules of Civil Procedure and CAP 29, be cognizable, the Court ORDERS the Claims Administrator create a $1.0 million reserve for possible future APRS Claims and associated attorney fee subsidies pursuant to Settlement Agreement § 3.4.  Given the reimbursement requirements of Settlement Agreement § 2.5, that reserve would be sufficient to pay ten APRS Claims.

### Extraordinary Injury Fund Claims – Settlement Agreement § 3.7

23.     The deadlines for making EIF Claims (Green Form) have nearly all passed.

24.     May 30, 2006 was the last possible date for Class Members to submit a compensable EIF Claim related to an Inter-Op Shell.

25.     The last possible date for a Tibial Baseplate-related EIF Claim will be on November 13, 2006.

26.     The last possible date for a Reprocessed Shell-related EIF Claim will be on September 4, 2007.

27.     CAP 13, permitting Class Members to relate certain newly advanced Claims back to their Green Form's submission date, had the consequence of extending some Claim deadlines. However, as Claims are finalized, the deadline extending effects of CAP 13 cease.  Of the 6,637 EIF Claims submitted, less than 100 from less than 30 different Claimants, remain to be finalized.

28.     The Claims Administrator has directed payment of approximately $106.1 million in EIF payments.

29.     While it is technically true that Class Members may submit Tibial Baseplate-related Claims as late as November 13, 2006 or Reprocessed Shell-related Claims as late as September 4, 2007, neither eventuality is likely.  For either of those deadlines to be applicable to a given Class Member, a Claimant would have to (i) undergo an APRS on the last possible date permitted by the Settlement Agreement, (ii) subsequently undergo NAPRS and ANAPRS on the last possible dates permitted by the Settlement Agreement, and (iii) wait until the last possible date to submit their Claims.

30.     The Claims Administrator's records do not reflect that any Tibial Baseplate or Reprocessed Shell Class Members underwent a NAPRS on the last possible day permitted by the Settlement Agreement.

31.      The Claims Administrator's experience in the Settlement has been that eligible Claimants typically submit Claims for benefits within approximately 90 days of the accrual of their right to make a Claim.

32.      During the month before the filing of the Claims Administrator's Motion for Approval of Settlement Wind Up Procedures, the Claims Administrator received no new Green Forms advancing timely EIF Claims.  Over the three months preceding the Claims Administrator's filing, the Claims Administrator has received only one new Green Form advancing a new EIF Claim.  Over the six months before the filing of the Claims Administrator's filing, the Claims Administrator has received a total of only two such Green Forms.

33.      The Claims Administrator having reviewed the pending EIF Claims, the Court ORDERS the Claims Administrator create a reserve of $3 million to pay currently pending EIF Claims and any associated attorney fee subsidies.

34.      Because (i) the Claim deadlines for EIF Claims have, in some instances, relatively recently passed, *see* Exhibit A (Status Report), Tab 4 (Landmark Settlement Dates) and (ii) the values of EIF Claims are relatively variable given the range of compensable injuries payable from the EIF, the Court ORDERS the Claims Administrator create a reserve of $2 million to pay potential future EIF Claims and any associated attorney fee subsidies.

**Uninsured APRS Claims – Settlement Agreement § 3.9(a)**

35.      The deadlines for making Uninsured APRS Claims (Red Form), pursuant to Settlement Agreement § 3.9(a), with a timely submitted Red Form, Settlement Agreement § 4.5, were the same as those for their associated APRS Claims.  As discussed above, those deadlines have now passed.

7

36.     On August 29, 2006, pursuant to Settlement Agreement § 3.9(a), the Claims Administrator demanded reimbursement of $582,520.06 from Sulzer for Uninsured APRS medical expenses that exceeded $15,000 per APRS.  Payment of that amount is pending.

37.     The Claims Administrator has completed review of all the submitted Red Form Uninsured APR Claims.  Fewer than thirty of these Claims await final payment from the Trust pending confirmation from Sulzer of its payment of its § 3.9(a) reimbursement.

38.     Because all submitted Uninsured APRS Claims have been finalized, the deadlines for making Uninsured APRS Claims have long passed, and no new Uninsured APRS Claims have been submitted in more than a year, the Court ORDERS the Claims Administrator not create a reserve for Uninsured APRS Claims.

**Indemnification of Medical Expense Subrogation Claims – Settlement Agreement § 3.9(c)**

39.     The Trust also indemnifies, pursuant to Settlement Agreement § 3.9(c), Class Members and Plaintiffs' Counsel from "claims by a subrogee directly against such Class Member[s] or Plaintiffs' Counsel for reimbursement of medical expenses of an Affected Product Recipient necessitated by an Affected Product."

40.     To date, the Claims Administrator's office has received 4,465 claims for indemnification from the Subrogation and Uninsured APR Sub-Fund for medical expense liens or claims of reimbursement.  Of those claims, fewer than 300 remain to be negotiated or resolved by final denial.[2]

41.     Although the Settlement Agreement contains no deadline for submission of these claims, the Claims Administrator has, pursuant to Settlement Agreement § 4.6(a)(permitting the Claims Administrator to set and notify Class Members of deadlines and to disallow claims

_____

[2] The large majority of these pending claims are potential claims for reimbursement by the United States for Tibial Baseplate-related APRS's.  The Claims Administrator's negotiations with the United States in this regard are proceeding apace and the Claims Administrator anticipates they will be concluded by the end of 2006.

received after applicable deadlines), reviewed indemnification claims as Class Members have submitted them and, in the course of paying some and disallowing others, advised claimants of the final disallowance of certain claims.

42.     To ensure the Trust's liability for indemnification claims is as clearly described as is practicable, the Court ORDERS that:

a.   No indemnification claim already resolved by the Claims Administrator and not timely contested pursuant to the Claims Administrator's determination notice may be paid by the Trust.

b.   Class Members must submit any indemnification claim not already presented to the Claims Administrator within 180 days of receiving notice of the claim and, in any event, no later than June 7, 2012.

43.     The Claims Administrator estimates that pending indemnification claims already submitted have an outside liability of approximately $3.7 million and therefore the Court ORDERS the Claims Administrator create a reserve in that amount for payment of those pending claims.

44.     Because (i) new indemnification claims must, to be compensable, be subrogation claims (i.e., causally linked to allegedly tortious conduct resolved by the Settlement Agreement), because, with the passage of time, (ii) Class Members' new medical expenses are increasingly less likely to be related to their Affected Products, (iii) relatively few new Class Members reported medical complications occurring many years after they were implanted with Affected Products, and (iv) Sulzer and the Claims Administrator have already negotiated and paid past and future Third Party Payor indemnification claims from a large number of major insurance

companies, the Court ORDERS the Claims Administrator create a reserve of $1 million for future subrogation indemnification claims.

45.     The Claims Administrator has been advised that some Third Party Payors may seek additional payments from the Subrogation and Uninsured APR Sub-Fund pursuant to certain provisions of settlements those Third Party Payors entered into with Sulzer and honored, pursuant to Settlement Agreement § 3.9(a), by the Trust.  The Court ORDERS that:

      a.  Any such requests for additional payments be submitted to the Court for consideration no later than October 31, 2006.

      b.  The Claims Administrator create a reserve of $2 million for payment of any such additional requests if granted by the Court.

**Errors and Omissions Insurance – Settlement Agreement § 4.6(g)**

46.     Settlement Agreement § 4.6(g) permits the Claims Administrator to obtain appropriate insurance.  The Claims Administrator has had errors and omissions insurance in force continuously since August of 2002 with annual premiums of approximately $45,000.

47.     That insurance, the proceeds of which, if ever called upon, would operate to protect the interests of both the Claims Administrator and the Settlement Class.

48.     The Court ORDERS that the Claims Administrator create a reserve of $400,000 to pay for errors and omissions insurance for the next five years in addition to an extended reporting policy (i.e., "tail") of up to three years.

**Escheat and Uncollected Claims – Settlement Agreement, Article 4**

49.     The Claims Administrator has worked over the past year to identify any uncashed Settlement benefit checks and to contact the payees for those checks.

50.     There remain approximately $250,000 in Settlement benefit checks that have not been cashed.

51.     The Court ORDERS the Claims Administrator create a reserve in the amount of $250,000 to pay, as appropriate, uncollected Claims.

### Final Report to Court – Trust Agreement § 5.03

52.     The Trust Agreement provides that "The Trust shall terminate as soon as practicable after the Trustee's obligation to disburse funds pursuant to this Trust Agreement and the Settlement Agreement has been satisfied.  The Trustee shall cooperate with the Claims Administrator in the termination of the Trust and winding up its affairs and the distribution of any remaining assets of the Trust as provided in the Settlement Agreement or at the direction of the Court."  Trust Agreement, § 5.03.

53.     The Claims Administrator has provided the Court a report summarizing the status of the Trust's payments and processing functions.  The Court ORDERS the Claims Administrator submit an updated, substantially similar version of this report to the Court on or about the first day of November each year beginning in 2007 until 2012, or until such other time as the Court enters an order that the Trust may be terminated.

### Common Benefit Fees and Expenses Fund -- Settlement Agreement § 5.4

54.     Of the $50 million and $7.5 million the Settlement Agreement initially allocated as permissible, but not required, Common Benefit Attorney fees and expenses, respectively. There remains unawarded $6,505,056.25 in potential Common Benefit attorney fees and $3,572,468.87 in potential Common Benefit expenses.

55.     There may be several law firms that wish to submit an application to the Court for an award of Common Benefit fees or expenses for work performed or expenses incurred since

the Court's award of Common Benefit fees and expenses in 2003.  *See* Docket Numbers 674, 738, 753, 868.

56.     So that the amount of any 2006 distribution of Trust assets to Class Members might be maximized, the Court ORDERS any such applications be submitted for review by the Court by November 15, 2006 and that, pending ruling on those applications, the Claims Administrator create a Common Benefit fee and expense reserve of $2,000,000.00.

**Document Storage and Retention Order -- Settlement Agreement § 15.1**

57.     The Claims Administrator's office has compiled many thousands of documents related to Class Members' Claims as well as a database containing Class Member Claim information.

58.     BrownGreer PLC and Cullen D. Seltzer, Attorney at Law PLC have also compiled a large number of documents that include legal advice provided to the Claims Administrator.

59.     Both types of documents have been electronically scanned and are presently stored at either law firm's offices or, in some instances, both.

60.     The Court ORDERS that:

a.   Both BrownGreer PLC and Cullen D. Seltzer, Attorney at Law PLC, or their permitted successors or assigns, retain electronic versions of all Settlement related documents and databases, in either removable media (DVD or its equivalent with a back-up for retention and storage in Cleveland) or on appropriately backed-up servers until December 31, 2019 in a manner that preserves Class Member confidentiality as required by Settlement Agreement § 15.1.  After December 31, 2019, BrownGreer PLC and/or Cullen D. Seltzer, Attorney at Law PLC, or their

permitted successors or assigns, may destroy or retain the records in their custody in a manner that preserves Class Member confidentiality as required by Settlement Agreement § 15.1.

b.  Paper records maintained by the Claims Administrator or his agents or designees be destroyed in a manner that preserves Class Member confidentiality as required by Settlement Agreement § 15.1 and that a reserve of $7,500 be created for that purpose.

c.  Upon a written request by Sulzer certifying that such documents are necessary, in connection with some threatened or actual litigation with a Class Member, to enforce the terms of the Settlement Agreement, the Claims Administrator shall provide to Sulzer copies of the Class Member's Claim Forms and the Class Member's payment history from the Trust, provided that the Claims Administrator shall not release any Class Member's medical records or other Claim processing documents except by order of the Court.

## Opt-Outs – Settlement Agreement § 3.8

61.  The deadline for opting out of the Settlement was no later than May 15, 2002 (five days after Trial Court Approval).  Having already reported all Opt-Outs to the Parties as required by the Settlement Agreement § 3.8, the Claims Administrator has no further obligation with respect to Opt-Outs.

## Attorney Fee Subsidies – Settlement Agreement § 5.1

62.  The Attorney Fee subsidies that accrue to Class Members, other than Common Benefit attorney fees or expenses as discussed above, have been disbursed as required along with their associated APRS and EIF benefits.  Therefore, the only remaining Claims for Attorney Fee

benefits to be processed are those associated with the pending APRS and EIF Claims described above.

63.     In addition to those Claims, one Class Member's attorney continues to make regular installment payments of an outstanding reimbursement due to the Trust.

**Guaranteed Payment Option – Settlement Agreement, Article 8**

64.     Class Members who submitted valid Orange Forms seeking APRS benefits within 120 days of Trial Court Approval, in 2002, were entitled to a quick Guaranteed Payment Option payment of $40,000 pending the Funding Date.   The Claims Administrator directed the first $40,000 GPO payments in August of 2002.

65.     The Funding Date, which was November 4, 2002, required Sulzer's payment of the substantial remainder of the Trust's initial endowment, also triggered the Trust's payment to Class Members of nearly all their APRS benefits.

66.     Beginning in December of 2002, the Trust began making $130,000 payments to Class Members with respect to their APRS Claims and ceased making preliminary $40,000 GPO payments for those same Claims.  The GPO program was, therefore, complete by the beginning of 2003, when the last GPO-electing Orange Forms were ripe for GPO payment.  The Trust's GPO payment obligations are complete.

**Sulzer's and the Class Representatives' Rights to Terminate the Settlement Agreement—Settlement Agreement, Article 10**

67.     The Settlement Agreement, and subsequent order of the Court, vested in Sulzer and Class Representatives the right to unilaterally terminate the Settlement Agreement under circumstances which, in any event, expired on or before May 31, 2002.  No Parties elected to terminate the Settlement Agreement and the parties' rights to terminate the Settlement Agreement have been extinguished.

**Settlement Implementation – Settlement Agreement, Article 13**

68.     All the provisions of Article 13 of the Settlement Agreement requiring the Court to make certain findings and enter certain orders staying and dismissing certain pending lawsuits and approving the Settlement Agreement have been fulfilled.

69.     The Court retains jurisdiction to enforce the Settlement Agreement as it relates to pending litigation involving Sulzer or Class Members or to such future litigation as well as to enforce the Settlement Agreement.  Settlement Agreement § 9.1.

**Reserve for Future Administration Expenses – Settlement Agreement § 15.6**

70.     The last possible deadline for making an Inter-Op Shell-based Claim for Settlement benefits has passed.

71.     The last possible deadline for making a Tibial Baseplate-based Claim for Settlement benefits will pass on November 13, 2006.

72.     The last possible deadline for making a Reprocessed Shell-based Claim for Settlement benefits will pass on September 4, 2007.

73.     Some late Claims may be cognizable pursuant to applicable rules of procedure and principles of law.

74.     Certain Claims for benefits from the Subrogation and Uninsured APR Sub-Fund of the Professional Services Fund may be made, pursuant to this ORDER, as late as June 7, 2012.

75.     Settlement Agreement § 15.6 provides that before any distribution of the remaining assets of the Trust shall be made, "the Claims Administrator shall first use any amounts remaining in any particular Fund after satisfaction of all obligations to Class Members to either pay for or create a reserve for payment of all administrative expenses that have been or

will be incurred in connection with the winding-up of the administration of the Sulzer Settlement Trust."

76.     The Court ORDERS that:

    a.     A reserve in the amount of $1.5 million be created for the payment of administrative expenses until December 31, 2012.

    b.     The Claims Administrator shall contract with appropriate administration and/or insurance providers to secure the availability of, and provide for, administration and wind up services until December 31, 2012; and a retainer of $360,000 shall be allocated to the Claims Administrator for his availability and services for that period, with reimbursement by the Claims Administrator to the Trust on or before November 1, 2012 for any unearned portion thereof.

    c.     The Trust make payments from this reserve in calendar year 2006 to avail itself to the maximum extent permissible of tax savings for the Trust in 2006.

**Trust's Tax Liabilities**

77.     The Trust has a still unpaid, but likely, 2006 federal tax liability of $450,000.

78.     Although there is no pending assertion by any taxing authority that the Trust has an outstanding past tax liability, in the event the Trust has a future assessment for taxes on income earned before 2007, creation of a reserve of $300,000 for potential past tax assessments is reasonable and appropriate.

79.     The Court ORDERS the Claims Administrator create a reserve of $750,000 for current and future tax liabilities.

**Liens on Class Member Settlement Benefits**

80.     There remains $165,769 in non-medical expense liens asserted against Class Member Settlement benefits.   The Claims Administrator continues to work with the lien filers and Class Members in these Claims to resolve an appropriate method for disbursing these Settlement benefits.

81.     The Claims Administrator recommends creating a reserve of $165,769 for disbursement of non-medical liens.

**Distribution of Remaining Trust Assets – Settlement Agreement §§ 5.2 and 15.6**

82.     Presently the Sulzer Settlement Trust retains approximately $59.42 million in assets.

83.     Taking into consideration the reserves prescribed by this ORDER, the Claims Administrator estimates that approximately $33.9 million may be distributed to Class Members pursuant to an Order of the Court.

84.     Two provisions of the Settlement Agreement describe what should happen with any residue of the Settlement Trust.

85.     Settlement Agreement § 5.2 provides that "[i]n the event there are any amounts in the Plaintiffs' Counsel Sub-Fund after all applicable amounts have been paid to Plaintiffs' Counsel, such remaining amount shall be distributed *pro rata* among all Class Members who received [APRS or EIF] benefits."

86.     The initial funding for the Plaintiffs' Counsel Sub-Fund was exhausted during Claim Processing, owing to greater than expected Claim submissions, but was supplemented with transfers from the Unrevised APR Fund as necessary to pay eligible Claims.

87.     In addition, Settlement Agreement § 15.6 provides that Class Counsel, together with the Special State Counsel Committee shall make a determination, subject to the approval of

17

the Court, with respect to the disposition of any amounts remaining in any particular Fund upon satisfaction in full of all obligations to pay Class Members and Plaintiffs' Counsel pursuant to the Settlement Agreement.

88.     Class Counsel and the Special State Counsel Committee join in the Claims Administrator's recommendation for the *pro rata* determination prescribed by this Order.

89.     Among the permissible determinations, Settlement Agreement § 15.6 specifically permits, but does not require, a *pro rata* distribution or a donation to a medical research institute or university or to charity "if the amount is negligible."

90.     The Court ORDERS that:

    a.  No later than December 31, 2006, the Claims Administrator create the reserves prescribed in this Motion ("Reserves"), provided, in the event that circumstances between the time of this Motion and December 31, 2006 permit a reasonable conclusion that the Reserves may be reduced, then the Claims Administrator may so reduce them, further provided that the Reserves shall, in total, be at least $10 million unless further reduced by Order of the Court;

    b.  No later than December 31, 2006, the Claims Administrator send a *pro rata* distribution of the balance of the Sulzer Settlement Trust, less the Reserves, ("Total *Pro Rata* Distribution Amount") to Class Members as described below:

        i.  Class Members eligible for the *pro rata* distribution ("Eligible Participants") shall include APR's or Representative Claimants of APR's who were awarded APRS or EIF benefits on or before November 30, 2006.

ii. Each Eligible Participant's share of the *pro rata* distribution shall be a function of two calculations.

    1. The first calculation is to determine the Eligible Participant's proportional share ("Proportional Share") of the *pro rata* distribution which shall be equivalent to the sum of the Eligible Participant's APRS and EIF benefits (excluding any attorney fee subsidy paid pursuant to Article V of the Settlement Agreement) divided by the total amount of APRS and EIF benefits awarded to APR's and Representative Claimants of APR's on or before November 30, 2006.

    2. The second calculation is to determine the Eligible Participant's *pro rata* distribution amount ("Individual Distribution Amount") which shall be equal to the Eligible Participant's Proportional Share multiplied by the Total *Pro Rata* Distribution Amount.

iii. To the extent practicable, there shall be only one *pro rata* distribution before the termination of the Trust.

iv. Checks for Individual *Pro Rata* Distributions shall be made payable, if a Class Member is represented by Plaintiff's Counsel, to Class Members and Plaintiffs' Counsel, jointly as provided in CAP 3.

v. A Plaintiff's Counsel may not collect an attorney fee in excess of 25% of a Class Member's Individual *Pro Rata* Distribution.

vi. The Claims Administrator shall enclose with each Individual *Pro Rata* Distribution a notice bearing the following text:

19

**NOTICE OF ADDITIONAL PAYMENT**

The Sulzer Settlement Trust is pleased to send you the enclosed check. This payment is **in addition** to the Settlement Benefits you previously received.

You are receiving this additional payment because, due to the careful and conservative management of the Settlement Trust, it is now clear that the total amount of Settlement Funds in the Trust exceeds the total amount of Claims Paid. These excess funds are now being awarded to eligible Class Members on a pro rata basis. The enclosed check is your Individual Pro Rata Distribution of the excess funds.

Earlier, you received payment of certain Settlement Benefits. This payment may have included a subsidy of the attorney fee that the Class Member owed to his or her attorney. The enclosed Individual Pro Rata Distribution does <u>not</u> include an attorney fee subsidy.

**The Court has ordered that, regardless of pre-existing contingency fee contracts allowing a greater amount, a Class Member's attorney may collect a contingent fee of no more than 25% of the enclosed payment.** Further, the Court encourages these attorneys to consider foregoing or further reducing their fee.

Finally, the Court has directed attorneys to send a copy of this Notice to their client Class Members, along with a clear explanation as to the amount, if any, of attorney's fees paid from this Individual Pro Rata Distribution.

The Court and the Sulzer Settlement Trust wish you a Happy and Healthy holiday season.

vii. Individual *Pro Rata* Distributions shall be paid, for ease of administration purposes, from the Extraordinary Injury Fund without regard to whether any Eligible Participant received Extraordinary Injury Fund benefits.

viii. The Claims Administrator is authorized to direct the Trustee to transfer funds from other funds of the Trust to ensure the EIF has sufficient funds to pay the Total *Pro Rata* Distribution Amount.

ix. Settlement Agreement § 2.5, providing for certain reimbursements by Sulzer, shall not be construed to require Sulzer to reimburse the Trust for any portion of any Individual *Pro Rata* Distributions.

x. The Claims Administrator shall preserve a record of the proportional increase in benefits that Eligible Participants receive as a result of this *pro rata* distribution.

1. Any APR or Representative Claimant who, after November 30, 2006, is awarded an APRS or EIF Settlement benefit which award would have counted toward his or her Proportional Share if awarded on or before November 30, 2006, shall be awarded Settlement benefits in accordance with applicable provisions of the Settlement Agreement and CAP's and, in addition, the proportional increase described in this section of this ORDER.

2. To the extent any new Settlement award includes a proportional increase, as described herein, Sulzer's reimbursement obligations pursuant to Settlement Agreement § 2.5 shall not include any such proportional increase.

c. On or about the first day of November of each year, beginning in 2007 and until 2012, the Claims Administrator shall report to the Court the status of Claims against the Trust and the cumulative amount of assets in the Trust with the expectation that each year some portion of the Reserves might be ordered by the Court to be contributed to an eleemosynary institution upon the recommendation of the Claims Administrator, Class Counsel, and the Special State Counsel Committee.

d. The Claims Administrator shall direct the Trustee to transfer funds from one fund of the Trust to another fund as necessary to pay present and future obligations of

the Trust without further requirement that an Order from the Court be obtained, provided that the Claims Administrator shall provide notice of such transfers to the Court and Class Counsel.

e.   Unless otherwise ordered by the Court, the Sulzer Settlement Trust shall terminate on December 31, 2012 and the Claims Administrator, Class Counsel, Special State Counsel, and the Trustee, their designees and agents, shall be discharged on that day from any further obligation with respect to the Sulzer Settlement Trust or implementation of the Settlement Agreement.  The provisions of this Order shall apply to any person or entity who is then serving in the capacity of the offices described in this paragraph or who has previously done so pursuant to the Settlement Agreement or an Order of the Court.

**IT IS SO ORDERED.**

**/s Kathleen M. O'Malley_____**
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**October 19, 2006**