**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| | : | **Case No. 1:01-CV-9000** |
| | : | |
| **IN RE: SULZER HIP PROSTHESIS** | : | **(MDL Docket No. 1401)** |
| **AND KNEE PROSTHESIS** | : | |
| **LIABILITY LITIGATION** | : | **JUDGE O'MALLEY** |
| | : | |
| | : | **MEMORANDUM AND ORDER** |
| | : | |

For the reasons stated below, pursuant to sections 5.4 and 5.6 of the Settlement Agreement,

the Court **ORDERS** that the following amounts be paid as additional common benefit awards:

- Plaintiffs' Liaison Class Counsel shall receive: (1) a common benefit attorney fee award of $211,187.50; and (2) a common benefit expense award of $15,896.11. These two amounts total $227,083.61.

- Glenn Zuckerman of Weitz & Luxenberg, P.C. shall receive a common benefit attorney fee award of $223,812.00.

- The request by Kim West of Wallace, Jordan, Ratliff & Brandt, LLC for a common benefit award is denied.

\*     \*     \*     \*     \*

As this Court has explained in earlier Orders, in the Settlement Agreement applicable in this

case, the parties and the Court reserved a maximum of $50 million, out of a total settlement valued

in excess of $1 billion, for the payment of common benefit attorney fee awards. *See* docket no. 738. In addition, the parties and the Court reserved a maximum of $7.5 million for the payment of common benefit expense awards. *See* docket no. 610. In 2003, the Court authorized common benefit attorney fee awards in the amount of $42,899,300.00, leaving a remainder of $7,100,700.00. The Court ordered this remainder be held in reserve "for payment of certain costs associated with effectuating the settlement and, if possible, distribution to the settlement class." *See* docket nos. 738, 753, 868, 1067, and 1281. The Court also expressed an expectation that a portion of this reserve amount would be used "to reimburse Plaintiffs' Liaison Class Counsel (at a reasonable hourly rate) for fees incurred in connection with its continued work with the Claims Administrator." Docket no. 738 at 2 n.2. Similarly, in 2003, the Court authorized common benefit expense awards in the amount of $3,760,583.81, leaving a remainder of $3,739,416.19. *See* docket no. 610. The Court ordered this remainder be held in reserve "for future Common Benefit expenses." *Id.*

During the several years following these 2003 awards, various attorneys did continue to provide services that inured to the common benefit of the entire class and to the Settlement Trust. Accordingly, the Court has since entered additional common benefit awards, including payment of: (1) additional common benefit attorney fees to Plaintiffs' Liaison Class Counsel (*see, e.g.,* docket no. 2845); and (2) additional common benefit expenses to Plaintiffs' Liaison Class Counsel, as well as to members of the Common Benefit Attorney Fee Committee (*see, e.g.,* docket nos. 2844 & 2850).

On November 15, 2006, Plaintiffs' Liaison Class Counsel submitted an application for additional common benefit attorney fees in the amount of $193,750.00, and for additional common benefit expenses in the amount of $15,896.11, totaling requested compensation of $209,646.11. Docket nos. 3283 & 3284. The time period associated with these fees and expenses is essentially the

2

last three years. On November 14, 2006, attorney Glenn Zuckerman of Weitz & Luxenberg, P.C. also

submitted an application for common benefit attorney fees in the amount of $98,750.00; he did not

submit an application for common benefit expenses. Docket no. 3278. The time period associated

with these fees is essentially the last four years. The Court concludes that the reasonable attorney fee

lodestar figure for Plaintiffs' Liaison Class Counsel is $211,187.50; and the reasonable attorney fee

lodestar figure for Zuckerman is $93,255.00.[1]

With respect to these two applications, the Court received a letter from the Claims

Administrator, unsolicited by above-mentioned counsel, lauding the efforts of these attorneys. The

---

[1] It appears that the lodestar amount of $193,750.00 submitted by Plaintiffs' Liaison Class
Counsel is conservative. Liaison Counsel explains that the number of hours claimed in the application
is fewer than those actually spent on common benefit work, because counsel did not document all of
their hours. Liaison Counsel concedes that those hours not documented are not compensable, under
the Court's guidelines, but it remains certain that Liaison Counsel's lodestar is lower than it might
otherwise be. Further, the Court notes that Liaison Counsel continues to charge the hourly rates
originally approved by this Court in 2003. Since that time, hourly rates have increased by
approximately 9%. *See* www.usdoj.gov/usao/dc/Divisions/Civil_Division (the Laffey Matrix,
published by the United States Department of Justice, sets out recommended "hourly rates for
attorneys of varying experience levels and paralegals/law clerks;" the matrix is "intended to be used
in cases in which a 'fee-shifting' statute permits the prevailing party to recover 'reasonable' attorney's
fees," but is also used, *inter alia*, to measure reasonable percentage increases in attorneys' hourly rates
over time. In 2003, this Court approved higher hourly rates than listed in the Laffey Matrix, partly
because it appeared to the Court that the risks taken by plaintiffs' attorneys in this case exceeded those
taken by counsel who seek compensation pursuant to a fee-shifting statute.). Increasing the
$193,750.00 lodestar submitted by counsel by 9% yields a reasonable lodestar of $211,187.50.
  It also appears that the lodestar amount of $98,750.00 submitted by Zuckerman is slightly too
high. The guidelines set out in this Court's initial Common Benefit Attorney Fee Order stated: "the
Court 'equalized' the [many] attorneys' lodestar calculations by substituting the following hourly
rates, depending on years of practice: 1-5 years, $200/hour; 6-9 years, $300/hour; 10-14 years,
$400/hour; and 15 years and over, $500/hour." Docket no. 738 at 31. These guidelines show that
Zuckerman's lodestar should be calculated using an hourly rate of $300, but Zuckerman used a rate
of $350. The fact that Zuckerman does not seek a separate award of common benefit expenses (which
are, therefore, obviously undocumented) cannot justify an increase of the hourly rate. On the other
hand, the Laffey Matrix suggests the $300 rate should be increased by 9%, and that Zuckerman's
paralegal rate was, if anything, low. These modifications yield a reasonable lodestar for Zuckerman
of $93,255.00.

3

letter notes especially that counsel's assistance in working through the complexities of claims administration, and counsel's efforts to protect the Settlement from attack on appeal, were "instrumental" and "extremely helpful" in bringing the Settlement Agreement fully into effect. It is fair to say that the efforts of Zuckerman and Plaintiffs' Liaison Class Counsel: (1) ensured that all of the possible benefits of the Settlement Agreement were, in fact, ultimately received by the Settlement Class; and (2) led to a more swift distribution of money and other benefits to claimants. To some extent, these efforts were expected of Plaintiffs' Liaison Class Counsel, given counsel's appointment by the Court to monitor the Claims Administration process and to liaise between class members and any parties with opposing interests. Zuckerman's efforts were more directly for his own clients. Nonetheless, his work clearly led to benefits enjoyed by the entire class. For example, Zuckerman filed the only amicus curiae brief in connection with an ultimately unsuccessful appeal that posed a significant challenge to the Settlement Agreement. In light of "the complexities of the case," "the quality of the attorney's work product, and the public benefit achieved," the Court concludes that a fee multiplier of 2.4 is appropriate for Zuckerman's work. *In re: Telectronics Pacing Systems, Inc.*, 137 F. Supp.2d 1029, 1041 (S.D. Ohio 2001); *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993).[2]

In sum, the Court has carefully reviewed the materials submitted in support of these two applications, in light of the standards, criteria, and published Guidelines previously set forth, and

---

[2] In its original Common Benefit Attorney Fee Order, the Court made clear that it did not use a simple lodestar/multiplier analysis in determining common benefit fee awards; rather, the Court used all of the factors set out in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974), *cert. denied*, 422 U.S. 1048 (1975) to determine awards, and then cross-checked the results by examining the "effective lodestar multiplier." *See* docket no. 738 at 25-26. In this case, the Court has also cross-checked its conclusions using both the *Ramey* factors and the lodestar/multiplier method.

concludes that common benefit awards are appropriate. Pursuant to sections 5.4 and 5.6 of the Settlement Agreement, the Court now **ORDERS** that the following amounts be paid as additional common benefit awards:

- Plaintiffs' Liaison Class Counsel shall receive: (1) a common benefit attorney fee award of $211,187.50; and (2) a common benefit expense award of $15,896.11; totaling $227,083.61.[3]

- Zuckerman shall receive a common benefit attorney fee award of $223,812.00 ($93,255.00 reasonable lodestar x 2.4 multiplier).

\*    \*    \*    \*    \*

In addition to the two applications discussed above, attorney Kim West of the law firm Wallace, Jordan, Ratliff & Brandt, LLC, submitted an application for $280,618.75 in common benefit fees and $28,199.69 in common benefit expenses, totaling requested compensation of $308,818.44. Unlike Zuckerman and Plaintiffs' Liaison Class Counsel, however, West did not represent, directly or indirectly, any plaintiff class members. Rather, West represented a number of Health Insurance Companies ("Insurers"). These Insurers had subrogation claims against the Settlement Trust for medical expenses that the Insurers paid to members of the Settlement Class. West represented the

---

[3] As the Court noted in its original Order awarding common benefit attorney fees, the Court then expected – and continues to expect – that the Settlement Trust would "reimburse Plaintiffs' Liaison Class Counsel (at a reasonable hourly rate) for attorney fees incurred in connection with its continued work with the Claims Administrator." Docket no. 738 at 2 n.2. It now appears that the bulk of such reimbursements to Plaintiffs' Liaison Class Counsel have been made. Going forward, the Claims Administrator has the discretion to pay any additional fee and expense amounts to Plaintiffs' Liaison Class Counsel for such work, on a simple hourly basis, without submission by counsel of an application for a common benefit award.

Insurers on a contingency basis, receiving a percentage of the subrogated amounts paid to the Insurers by the Settlement Trust. The direct beneficiaries of West's efforts were the Insurers; her efforts did not yield payment of any funds to any member of the plaintiff class.

West submitted an application for a common benefit award in 2003, which this Court denied in its entirety. The essence of West's position, at that time, was that her work did inure to the common benefit of the entire plaintiff class, under the following syllogism: (1) Sulzer would not have entered into the Settlement Agreement at all unless the Agreement included provisions regarding Sulzer's liability for Insurers' subrogation claims; (2) she negotiated those provisions, including both the total amount that would be earmarked for payment of subrogation claims[4] and also the mechanisms the parties would use to determine the amount and validity of each claim; and (3) "but for" her efforts, Sulzer would not have entered into the Settlement Agreement, and no class member would have obtained any benefits. The Court concluded this argument was not well-taken because the same basic argument could be made by any number of entities. An example: "but-for" the decision of Sulzer AG to forego jurisdictional arguments and commit over $100 million in cash and stock to the settlement, no Settlement Agreement would have been reached – but that did not entitle Sulzer AG's counsel to a common benefit award. Because West's efforts did not inure directly to the benefit of the plaintiff class, the Court denied her application for a common benefit award.

With her current application, West takes a different approach. West now argues that, while her efforts were made primarily on behalf of her own Insurer clients, her work also inured to the

---

[4] The Settlement Agreement provided there would be a $60 million "Subrogation and Uninsured Expenses Sub-Fund." Payments were made by the Claims Administrator from this Sub-Fund of $16.5 million to Medicare and $17.6 million to various Insurers; of the latter amount, $3.1 million was paid to West's clients, and she received contingent fees of about $613,000.

benefit of over 400 other Insurers, all of whom adopted the subrogation claims mechanisms she advocated and obtained funds from the Subrogation Sub-Fund she negotiated. West asserts that, absent her work – which included obtaining from Sulzer business and medical records that allowed *all* Insurers to determine whether they even had a colorable basis to make a subrogation claim – none of these other Insurers would have obtained any subrogated funds from the Settlement Trust.

The Court agrees with West that her work did clearly confer a substantial benefit upon other Insurers. For two primary reasons, however, the Court does not agree this means West is now entitled to a common benefit award. The first reason is that the terms of the Settlement Agreement, itself, do not allow it: the Settlement Agreement states that certain attorney fees and expenses may be paid out of the settlement funds to attorneys who "contributed to the creation of the Settlement Trust through work devoted to th[e] 'common benefit' *of Class Members*." Settlement Agreement at §1.1(v) (docket no. 361) (emphasis added). As noted above, the Court earlier determined that West's efforts were not devoted to or directly beneficial to class members, as opposed to Insurers. Indeed, an argument can be made that West's efforts were directly *harmful* to class members, because every dollar paid by the Trust to Insurers was unavailable for payment of benefits to plaintiffs.

The second reason is that the equities of this case do not weigh in favor of a common benefit award to West. Awards of common benefit fees and expenses are equitable in nature and "allow[] an award of fees to a plaintiff whose suit creates, enlarges, or protects a fund shared by members of a class." *Shimman v. International Union of Operating Engineers, Local 18*, 744 F.2d 1226, 1234 (6th Cir. 1984), *cert denied*, 469 U.S. 1215 (1985). The rationale for common benefit awards is that to allow "others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense." *Id.* In other

7

words, when a group recovers funds, a small part of each group-member's recovery is given to the person whose work actually recovered the funds for the entire group. In this case, while the $60 million Subrogation Sub-Fund was earmarked to pay claims made by Insurers, the funds were never a recovery that "belonged" to the Insurers; any money not paid from the Sub-Fund reverts to the plaintiff class. Thus, West now seeks a small part of *each plaintiff class member's* recovery for her work done on behalf of the *Insurers*. The inequity of this proposition is obvious. While it is clear that others benefitted from West's work without paying her for it, equity calls for West to seek compensation from the non-client Insurers who made successful subrogation claims – not from plaintiff class members, who were more directly injured by defendants (and, thus, more deserving of compensation) than were West's Insurer clients.[5]

    **IT IS SO ORDERED.**

                                     /s/ Kathleen M. O'Malley

                                     **KATHLEEN McDONALD O'MALLEY**

                                     **UNITED STATES DISTRICT JUDGE**

**DATED:** December 26, 2006

---

    [5] It is also worth noting that: (1) the other Insurers who are arguably unjustly enriched by benefitting from West's efforts without paying her for it could always have afforded to do so; this is unlike the members of the plaintiff class, who could not afford individually to underwrite the litigation against Sulzer, which is part of the policy justification for compensating common benefit efforts in the first place; and (2) West avers she received contingent compensation of $613,635.61 and spent 1,361 hours of common benefit time, representing an hourly rate of $450; the *Ramey* factors suggest the amount West has *already received* is close to the common benefit lodestar that might be otherwise appropriate. *See* docket no. 738, attachment 1 (chart setting out common benefit attorney fee awards and lodestars). Finally, West's observation that all of the parties in the *Baycol* MDL negotiated common benefit attorney fee awards to counsel for insurers does not support her position, as the parties in this MDL clearly did not agree to similar provisions.