01cv9000-ze-Clements.wpd

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

|  |  |  |
|---|---|---|
| | : | Case No. 1:01-CV-9000 |
| | : | |
| IN RE: SULZER HIP PROSTHESIS | : | (MDL Docket No. 1401) |
| AND KNEE PROSTHESIS | : | |
| LIABILITY LITIGATION | : | JUDGE O'MALLEY |
| | : | |
| | : | **MEMORANDUM AND ORDER** |
| | : | |

Defendant Sulzer Orthopedics moves the Court to issue an Order enjoining class member Richard Clements from prosecuting certain settled claims (docket nos. 3307, 3308). For the reasons stated below, this motion is **GRANTED**. The Court hereby **ENJOINS** the continued prosecution by plaintiff Richard Clements (or his attorney or any other entity) of the following case, or any other case asserting similar claims: *Clements v. Sulzer Orthopedics*, case no. BC263905, Los Angeles County Superior Court. Further, the Court **ORDERS** that counsel for Clements shall: (1) immediately transmit a copy of this Order to: (a) Clements, and (b) the relevant state court; and (2) thereafter submit to this Court a letter confirming compliance with this provision.[1]

---

[1] This injunction does not prohibit Clements from: (1) attempting to make a late claim for payment of benefits under the Settlement Agreement in this case; or (2) pursuing any related claims against his own attorney. The Court has no opinion regarding Clements' entitlement to benefits under the Settlement Agreement, or regarding any claims he may have against any other entities.

**I.     General Background.**

Sulzer's motion to enjoin Clements from prosecuting certain claims in state court is not the first such motion that Sulzer has filed. On July 15, 2005, this Court issued an Order granting a similar motion by Sulzer to enjoin the prosecution of state court actions filed by two other class-member plaintiffs in this Multi-District Litigation ("MDL"). *See* docket no. 2958 (July 15, 2005) (enjoining plaintiffs Robert Noel and Christopher Green from continuing the prosecution of their cases) ("*Green Order*"). The Sixth Circuit Court of Appeals subsequently affirmed. *In re: Sulzer Orthopedics, Inc.*, case no. 05-4120: 05-4574 (6th Cir. Sept. 27, 2006).

In the *Green Order*, the Court set out the "General Background" of this Multi-District Litigation (*Green Order* at 2-6), and then turned to a discussion of the individual circumstances of the two different plaintiffs at issue (*see id.* at 6-9, discussing plaintiff Robert Noel; *id.* at 9-13, discussing plaintiff Christopher Green). Rather than repeat itself, the Court hereby incorporates by reference the recapitulation contained in the *Green Order* of the "General Background" of this MDL. The Court now turns directly to the individual circumstances of plaintiff Robert Clements.

**II.    Plaintiff's Individual Circumstances.**

Plaintiff Robert Clements received an Inter-Op Hip prosthesis on August 22, 2000. This date was a little over three months before Sulzer undertook its voluntary recall of certain manufacturing lots of its Inter-Op Shell hip implants. Clements' implant was included in this product recall. On January 3, 2001, Clements had revision surgery to remove his Inter-Op implant.

In the wake of Sulzer's product recall, hundreds of plaintiffs filed cases across the country in state and federal courts. On June 9, 2000, the MDL Panel consolidated and transferred all related

pending federal litigation to the Northern District of Ohio and assigning oversight of the MDL proceedings to the undersigned. Similarly, in California, all Sulzer-related state-court litigation was consolidated into a coordinated proceeding known as *In re: Hip Replacement Cases I*, presided over by the Honorable Ronald M. Sabraw.

On July 30, 2001, a master complaint was filed in *In re: Hip Replacement Cases I*, and on December 18, 2001, plaintiff Clements filed a "notice of Adoption of Master Complaint," thereby filing suit against Sulzer. Clements' attorney in this action was James G. O'Callahan, with the firm Girardi & Keese. On July 9, 2002, Clements' lawsuit was formally included in the California coordinated proceeding. Clements' case thus became subject to a stay order previously entered by Judge Sabraw on September 19, 2001, so Clements' California lawsuit has been stayed for about five years.

As noted in the "General Background" section of the *Green Order*, the parties in this MDL jointly submitted a proposed Final Settlement Agreement on March 12, 2002. The Court preliminarily approved this Final Settlement Agreement as fair. Two weeks before that, on February 27, 2002, the Court had approved a joint plan for giving notice to the entire plaintiff class of the terms of any Final Settlement Agreement that might be reached. *See* docket no. 216 ("*Notice Order*"). Thus, immediately after the Court preliminarily approved the Settlement Agreement, notice was issued to the class outlining the settlement terms and explaining the deadline for opting out of the Settlement Agreement.

One of the many avenues of sending notice to the class was a direct mailing to known class members and/or their attorneys. At the time this direct mail notice was sent, the law firm of Girardi & Keese ("G&K"), of which Clements' attorney, O'Callahan, is a member, represented at least a

dozen members of the Settlement Class (including derivative claimants, such as spouses). Accordingly, on March 23, 2002, the Claims Administrator mailed to G&K 10 separate notices of the Settlement Agreement. Of course, these notices each contained an explanation of the opt-out date.[2]

In Clements' opposition to Sulzer's motion for injunctive relief, attorney O'Callahan avers as follows: "On or about May 15, 2002 we were served notice of and order enjoining litigation. On that same day we received a notice which stated that the 'opt out' deadline was May 15, 2002. The notice was served on May 14, 2002."

This averment is unclear to the point of being opaque. It does not explain who "we" is; does not explain or attach the "order enjoining litigation"; and does not explain the distinction between "receiving" notice of the opt-out deadline on May 15, 2002 and "service" of notice of the opt-out deadline one day earlier, on May 14, 2002.[3] In any event, attorney O'Callahan states he "was unable to contact [Clements] [before the opt-out deadline] to discuss what [his] decision was with respect to

---

[2] Eight of the notices were addressed "c/o Girardi & Keese" to the following class members: (1) Atkins, Peter; (2) Fritts, Karen; (3) Fritts, William; (4) Gillespie, John; (5) Herne, Mary; (6) Jennings, Margaret; (7) Levine, Shirley; and (8) Oehler, Dale. A ninth notice was addressed to class member Dale Oehler "c/o James G. O'Callahan, Girardi & Keese." Finally, a tenth notice was sent directly to attorney John Girardi. Thus, the Claims Administrator mailed to G&K at least 10 different notices of the Settlement Agreement and opt-out date.

The Court also notes that, on March 23, 2002, the Claims Administrator mailed notice directly to class member "Richard R. Clements, 1154 E. Wardlow Rd., Long Beach, CA 90817." Clements' briefing does not address any such notice, and the Court is unable to determine whether this Richard R. Clements, Esq., to whom notice was mailed directly, is the same person as O'Callahan's client. If the Richard Clements who is O'Callahan's client did, in fact, receive notice directly, then the granting of Sulzer's motion is even more appropriate.

[3] The Court can only guess that "we" refers to the law firm of G&K. The "order enjoining litigation" might refer to this Court's September 17, 2001 Order enjoining all related state-court litigation, but this Order was issued eight months before O'Callahan avers he received notice of it, and this Order is mostly irrelevant to the issues raised by Sulzer's motion. The Court has no idea what the distinction between "service" and "receipt" of notice means.

opting out of the class settlement". Opposition at 2. O'Callahan then goes further, asserting that, "[s]ince the notice presented unreasonable time constraints by failing to provide [Clements] with a meaningful opportunity to 'opt out' of the class settlement, [I] believed that the notice was inapplicable to [Clements] and that [Clements] would not be bound by the class settlement." *Id.*

Although Clements may have been entitled to at least $206,000 in Settlement Benefits,[4] he did not submit any benefit claim forms. This is in contrast to at least 10 other clients of G&K, who did submit claim forms.[5] Of course, the deadlines for submission of these claim forms have now long passed.

During the five years that elapsed since Clements' attorney O'Callahan received notice of the opt-out deadline, Clements has not filed any paper with this Court, nor – until recently – has he taken any action in pursuit of his California state court claims. On March 2, 2007, however, Clements filed in the California state court a motion to remand his lawsuit out of the coordinated proceedings back to the active trial docket. In other words, Clements now seeks to resume litigation of his state law claims against Sulzer related to his Inter-Op implant. With its current motion, Sulzer asks the Court to enjoin Clements from prosecuting this California lawsuit.

---

[4] Class members who, like Clements, had revision surgery to remove an affected product were usually entitled to, among other benefits: (1) $160,000 in compensation; (2) a subsidy of up to $46,000 in contingent attorney fees; (3) payment of any uninsured medical expenses related to revision surgery; and (4) additional compensation for certain extraordinary injuries.

[5] The Claims Administrator's records show that G&K submitted claims forms on behalf of 10 different class members. Six of these claimants received benefits ((1)Atkins, Peter; (2) Fritts, Karen; (3) Fritts, William; (4) Herne, Mary; (5) Jennings, Margaret; and (6) Knight, Valerie); the other four were denied benefits, for various reasons ((1) Cueto, Deborah; (2) Levine, Shirley; (3) Oehler, Dale; and (4) Oehler, Sharon). At least four claims submitted by G&K (including two claims for extraordinary injury benefits above and beyond "standard" compensatory benefits) were denied as untimely.

**III.     Analysis**.

The Court's analysis of the parties' arguments need not detain it long.  Clements asserts that "it is established beyond a doubt that where members of a class have a substantial claim, individual notice is required . . . ."  Opposition at 3.  Further, Clements insists this individual notice "must be sufficient to provide a meaningful opportunity to exercise the right to 'opt out' . . . ."  *Id.*  Clements then concludes with the following argument:

> [T]he notice received by the Plaintiff was untimely in that it failed to provide Plaintiff with a meaningful opportunity to "opt out" of the class settlement.
>      Here, counsel for the Plaintiff received notice of the "opt out" deadline on the day on the day [sic] of the "opt out" deadline.  Due to the unreasonable time constraints caused by the less than one day notice of the "opt out" deadline, counsel for Plaintiff was unable to contact Plaintiff to discuss whether Plaintiff would exercise his right to "opt out" of the class settlement.  Therefore, the Court should find that the notice provided to Plaintiff was not adequate in that it failed to provide Plaintiff with meaningful opportunity to exercise his right to "opt out" of the class settlement.  For these reasons, Plaintiff respectfully requests that the Court deny Defendant's motion in its entirety.

*Id.* at 5-6.

There are two points to be made regarding Clements' argument.  The first is that his legal position is simply wrong.  Class members do *not* have an absolute right to individualized notice.  And O'Callahan must know that this supposed absolute right is *not* "established beyond a doubt," given Sulzer's citation and discussion of the *Green Order* in its motion for injunction.  As the Court explained in the *Green Order*, "[c]ourts have consistently recognized that due process does not require that every class member receive actual notice so long as the court reasonably selected a means likely to apprise interested parties."  *Green Order* at 10-11 (quoting *In re Prudential Ins. Co. of America Sales Prac. Litig.*, 177 F.R.D. 216, 231 (D. N.J. 1997), and citing *Mullane v. Central Hanover Bank*

6

*& Trust Co.*, 339 U.S. 306, 314 (1950)).[6] While the *plan for giving notice to the entire class* must be legally and constitutionally sufficient, there is no requirement that any particular class member receive "individually sufficient notice." O'Callahan cannot cite any case supporting his legal position, because there is none.[7]

Indeed, the circumstances of class member Green (who was 16 years old when he received his Inter-Op hip implant) are illustrative. Green stated he was completely unaware of the existence of the MDL or the Class Settlement until May of 2004. Thus, he neither opted out nor submitted a claim for benefits on a timely basis. Despite having sympathy for Green, the Court enjoined him from suing Sulzer in Texas state court:

> While Green's asserted failure to receive actual notice is unfortunate, it does not remove him from membership in the settlement class, nor from the ambit of the Settlement Agreement. "[C]lass members [are] bound by the final judgment in a class action despite the lack of individual notice." *Prudential Ins.*, 177 F.R.D. at 232.

*Green Order* at 11-12. This ruling had the effect of precluding Green from obtaining any compensation for his alleged injuries.

In comparison to Green, Clements' procedural circumstances were much less onerous. Attorney O'Callahan admits that he *received actual notice* of the opt-out deadline before it expired, although only by one day. Further, Clements had plenty of time to file a claim for benefits, but chose

---

[6] Rather than repeat it here, the Court specifically incorporates by reference the legal analysis set out in the *Green Order*. If Clements chooses to appeal the instant Order, the *Green Order* should be made a part of the appellate record.

[7] O'Callahan does cite *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156 (1974). This case states that "the express language and intent of Rule 23(c)(2) leave no doubt that individual notice must be provided to those class members *who are identifiable through reasonable effort*." *Id.* at 175 (emphasis added). *Eisen* does not stand for the proposition that every individual class member is absolutely entitled to individual notice.

7

not to do so. O'Callahan's reasoning that he personally "believed" that the notice was "inapplicable" to Clements, so that Clements would not be bound by the Class Settlement, is pure ipse dixit. O'Callahan's personal belief, unsupported by any legal authority, has apparently cost Clements any chance at compensation for his alleged damages. In any event, the Sixth Circuit Court of Appeals found well-supported this Court's Order enjoining Green – who received *no* notice before expiration of all relevant deadlines – from pursuing his state court claims against Sulzer. An Order similarly enjoining Clements is appropriate *a fortiori*.

The second point that must be made regarding Clements' argument is that his factual position appears suspect. Clements' attorney, O'Callahan – together with his law firm, G&K – received numerous copies of the notice applicable to the entire class. While the record does not reflect the date that G&K attorneys *received* all of these notices, the notices were mailed about eight weeks before the opt-out deadline. And, tellingly, the notices were apparently received in enough time for G&K attorneys to confer with all their *other* class member clients regarding whether to opt out. (None did.)[8]

O'Callahan is silent regarding how it is that he and his firm had sufficient time to confer with all of their other class member clients, but not with Clements. Even if the Court accepted Clements' argument that he was entitled to more than one day between the date his attorney received the Settlement notice and the date of the opt-out deadline, it appears there *was*, in fact, substantially more time than the one day that O'Callahan avers he had. O'Callahan's excuse for not having conferred

---

[8] This includes claimant Dale Oehler, whose claim was ultimately denied because it was not timely submitted. The Claims Administrator sent notice to "Dale Oehler, c/o James G. O'Callahan, Girardi & Keese." O'Callahan has never complained that he did not have sufficient time to discuss opt-out rights with Oehler.

with Clements before the deadline rings hollow.

Clements is now faced with several options.  He can file a late claim for benefits under the Settlement Agreement.  Whether such a claim is well-taken, and whether there might be some rule excusing Clements from having missed various deadlines, is up to the Claims Administrator; the Court has no opinion on these issues.  Clements can also pursue a claim against O'Callahan, whose actions may have deprived Clements of any chance at compensation.  The Court also has no opinion on the viability of any such claim.

One thing that Clements cannot do, however, is pursue his California state court lawsuit against Sulzer.  For the reasons stated in the *Green Order*, all of the claims stated in that lawsuit are "Settled Claims," as that term was defined in the Settlement Agreement.  Accordingly, Sulzer's motion to enjoin Clements from prosecuting the claims asserted in *Clements v. Sulzer Orthopedics*, case no. BC263905, Los Angeles County Superior Court, must be granted.

**IT IS SO ORDERED.**

/s/ Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED**: May 15, 2007